1   James H. Oddie (SBN 248850)
    William C. Lynn (SBN 256662)
2   ODDIE, LYNN & GRISANTI, P.C.
    22 Battery Street, Suite 1000
3   San Francisco, CA 94111
    Phone: (415) 296-9600
4   Fax:   (415) 296-9602

5   Attorneys for Plaintiffs

6

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10              OAKLAND DIVISION

ADR

11

12   ZENEIDA PERDOMO, and BIOMEDA, CORP., a    **CASE NO.:** C09-05976
    Delaware Corporation,
13
             Plaintiffs,        **COMPLAINT FOR VIOLATIONS OF RACKETEER AND CORRUPT ORGANIZATIONS ACT (18 U.S.C. § 1961), MAIL FRAUD (18 U.S.C. § 1341), WIRE FRAUD (18 U.S.C. § 1343), CIVIL FORFEITURE (18 U.S.C. § 981), ELECTRONIC FUNDS TRANSFER ACT (15 U.S.C. § 1693), CALIFORNIA CIVIL CODE §§ 1573, 1709, 3336, AND UNFAIR COMPETITION LAW**
14
15              vs.
16   CARMEN GARCIA, aka Maria Garcia, aka Maria
    Carmen Garcia, aka Maria Del Carmen Garcia, aka
    Maria Del C Garcia, aka Maria D C Garcia, JOSE
17   J. GARCIA, aka Jay Garcia, U.S. BANCORP, a
    Delaware Corporation, JAVAD ZOLFAGHARI,
18   JULIA ZOLFAGHARI, aka Julia Hashemieh,
    PUBLIC STORAGE FRANCHISE, INC., a
19   California Corporation, COLDWELL BANKER
    LLC, a California Limited Liability Corporation,    **DEMAND FOR JURY TRIAL**
20   BRENDA OLIVEIRA, and DOES 1-20, inclusive,

21              Defendants.

22              **INTRODUCTION**

23   1.  Plaintiffs bring this civil action, and demands a jury trial of all issues, for RICO remedies authorized

24       by federal statutes at 18 U.S.C. § 1961 *et seq.*; for actual, consequential, and exemplary damages;

25       and for all other relief this honorable Court deems just and proper under all circumstances which

26       have occasioned this Complaint. See 18 U.S.C. § 1964(a) and (c) (2006) ("Civil RICO").

27   2.  The primary cause of this action is a widespread criminal enterprise engaged in a pattern of

28       racketeering activity across State lines, and a conspiracy to engage in racketeering activity involving

*Perdomo, et al. v. Garcia, et al. – Complaint for Violations of Racketeer and Corrupt Organizations Act (18 U.S.C. § 1961), and California State Law*

numerous RICO predicate acts during the past ten (10) calendar years.

3. The predicate acts alleged here cluster around false personation of government officers or employees, attempted kidnapping, mail fraud, and wire fraud. <u>See</u> 18 U.S.C. §§ 912, 1201, 1341, and 1343.

4. The primary objective of the racketeering enterprise has been to inflict severe and sustained economic hardship upon Plaintiffs.

## JURISDICTION AND VENUE

5. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331.  This case arises under the laws of the United States, and it presents a federal question within this Court's jurisdiction for violations of 18 U.S.C. §§ 912, 981, 1201, 1341, 1343, 1961, 1962, 1964, and 1965.

6. Jurisdiction is further conferred upon this Court pursuant to 28 U.S.C. Section 1332, whereas the parties are citizens of different states, and the amount in controversy exceeds $75,000.

7. The Court has supplemental jurisdiction pursuant to 28 U.S.C. Section 1367 to hear and determine Plaintiffs' state law claims because those claims are related to Plaintiff's federal claims and arise out of a common nucleus of operative facts and form part of the same case or controversy under Article III of the United States Constitution.

8. This Court has personal jurisdiction over Defendants under California Code of Civil Procedure section 410.10 in that Defendants either reside in, are domiciled in, do business in, or otherwise have minimum contacts with the State of California so that this Court's jurisdiction over them is justified.

9. Venue is proper in the Northern District of California pursuant to 28 U.S.C. section 1391(b)(2) in that the unlawful conduct that gave rise to these claims occurred within the Northern District of California.

## INTRADISTRICT ASSIGNMENT

10. Pursuant to Civil L.R. 3-2(c), this action arises out of San Mateo County in the Northern District of California.  A substantial amount of the events which give rise to the claims set forth herein, occurred in the County of San Mateo.

## PARTIES

11. Plaintiff Zeneida Perdomo ("Ms. Perdomo") is a natural person over the age of 18, and all times

mentioned herein, was a resident of the County of San Mateo, State of California.

12. Plaintiff Biomeda Corporation ("Biomeda") is a corporation incorporated under the laws of the State of Delaware.

13. From 1982 through 2008, Biomeda was a biomedical company, having its primary place of business in the State of California, that manufactured and sold antibodies, serums, plasma, and related products for diagnosis and research purposes.

14. At all relevant times mentioned herein, Biomeda's primary place of business was located at 1849 Bayshore Boulevard, Suite 200 ("1849 Bayshore"), in Burlingame, California.

15. Ms. Perdomo, at all times mentioned herein, was the President and controlling shareholder of Biomeda.

16. Upon information and belief, Defendant Carmen Garcia ("Defendant Garcia"), aka Maria Garcia, aka Maria Carmen Garcia, aka Maria Del Carmen Garcia, aka Maria Del C Garcia, aka Maria D C Garcia, is a natural person over the age of 18, and at all times mentioned herein, was a resident of the County of Alameda and the County of San Mateo, State of California.

17. Upon information and belief, Defendant Jose Garcia, aka Jay Garcia ("Defendant Jose Garcia"), is a natural person over the age of 18, at all times mentioned herein, was a resident of the State of Texas.

18. Defendant Garcia was an individual employed by Biomeda. Defendant Garcia had authority to use Biomeda funds for purposes related to Biomeda's business only. Defendant Garcia was not authorized to receive, take, or use any funds from Biomeda or Ms. Perdomo for Defendant Garcia's personal use other than Defendant Garcia's salary from Biomeda, which was approximately $45,000 per year. Defendant Garcia was responsible for processing Biomeda's invoices to be sent to Biomeda's customers for payments, the receipt of said payments, and the depositing of said payments into Biomeda's bank account. Defendant Garcia was also responsible for processing Biomeda's payroll through Paychex, and ensuring all payroll tax deposits were timely made. Upon information and belief, without Plaintiffs' consent and knowledge, Defendant Garcia caused Plaintiffs' contract with Paychex to terminate, and subsequently failed to remit payroll taxes as required to the Internal Revenue Service. Defendant Garcia was also responsible for processing invoices from Biomeda's vendors and providing payments to said vendors.

*Perdomo, et al. v. Garcia, et al. – Complaint for Violations of Racketeer and Corrupt Organizations Act (18 U.S.C. § 1961), and California State Law*

19. Upon information and belief, Defendant Javad Zolfaghari ("Defendant Mr. Zolfaghari") is a natural person over the age of 18, and at all times mentioned herein, was a resident of the County of Santa Clara, State of California.

20. Upon information and belief, Defendant Julia Zolfaghari, aka Julia Hashemieh, ("Defendant Ms. Zolfaghari") is a natural person over the age of 18, and at all times mentioned herein, was a resident of the County of Santa Clara, State of California.

21. Upon information and belief, Defendant Mr. Zolfaghari, at all times mentioned therein, was an owner of 1849 Bayshore.

22. Upon information and belief, Defendant Ms. Zolfaghari, at all times mentioned therein, was an agent of Defendant Mr. Zolfaghari.

23. Defendant U.S. Bancorp ("Defendant U.S. Bank") is, and at all times mentioned herein, is a corporation incorporated under the laws of the State of Delaware, and is licensed to do business, and is doing business in the State of California.

24. Defendant Public Storage Franchise, Inc. ("Defendant Public Storage") is, and all times mentioned herein, is a California corporation, and is licensed to do business and is doing business in the State of California.

25. Defendant Coldwell Banker LLC ("Defendant Coldwell Banker") is, and all times mentioned herein, is a California limited liability corporation, and is licensed to do business and is doing business in the State of California, having its principal place of business in California.

26. Upon information and belief, Defendant Brenda Oliveira ("Defendant Oliveira") is a natural person over the age of 18, and at all times mentioned herein, was a resident of the State of California.

27. Upon information and belief, Defendant Oliveira, at all times mentioned herein, was an employee and/or agent of Defendant Coldwell Banker.

28. Ms. Perdomo is ignorant of the true names and capacities of the defendants sued herein under the fictitious names DOE ONE through DOE TWENTY, inclusive. Ms. Perdomo will amend this complaint to allege their true names and capacities when ascertained. Ms. Perdomo is informed and believes that each of the DOE defendants is responsible in some manner for the occurrences and injuries alleged in this complaint.

*Perdomo, et al. v. Garcia, et al. – Complaint for Violations of Racketeer and Corrupt Organizations Act (18 U.S.C. § 1961), and California State Law*

29. At all times mentioned in the causes of action to which this paragraph is incorporated by reference, each and every Defendant was the agent or employee of each and every other Defendant. In doing the things alleged in the causes of action into which this paragraph is incorporated by reference, each and every Defendant was acting within the course and scope of this agency or employment and was acting with the consent, permission, and authorization of each of the remaining Defendants. All actions of each of the Defendants alleged in the causes of action into which this paragraph is incorporated by reference were ratified and approved by the officers or managing agents of every other Defendant.

## **FACTUAL ALLEGATIONS**

30. Beginning at a time unknown to Plaintiffs, but no later than in or about July 2006, and persisting over many months, through about February 2008, Defendants Garcia and Does 1 through 20 did knowingly and intentionally devise a material scheme and artifice to defraud Ms. Perdomo and Biomeda as to material matters, and to obtain money and property from Ms. Perdomo and Biomeda by means of materially false and fraudulent pretenses, representations, promises, and omissions, knowing that the pretenses, representations, promises, and omissions were false and fraudulent when made.

31. As part of the scheme to defraud Biomeda and Ms. Perdomo, and in order to obtain money from Biomeda and Ms. Perdomo, Defendants Garcia and Does 1 through 20 engaged in certain conduct and made, in sum and substance, certain material pretenses and false representatives, promises, and omissions, including, but not limited to the following:

    a. Defendant Garcia told Ms. Perdomo a federal crime was being committed against Biomeda and Ms. Perdomo, and the Federal Bureau of Investigation ("FBI") was investigating the reported crime;

    b. Defendant Garcia told Ms. Perdomo someone might want to kill Ms. Perdomo;

    c. Defendant Garcia told Ms. Perdomo she should not talk to anyone about the purported FBI investigation;

    d. Defendant Garcia told Ms. Perdomo she should not check her bank accounts;

    e. Defendant Garcia told Ms. Perdomo she should limit her visits to Biomeda;

f. Defendant Garcia told Ms. Perdomo she should stay home;

g. Defendant Garcia told Ms. Perdomo the FBI referred an attorney named Dave Lerner ("Lerner") to Ms. Perdomo to represent her in connection with issues related to the purported crime being committed against Ms. Perdomo and Biomeda.

32. It was further part of the scheme to defraud Ms. Perdomo and Biomeda that Lerner did not exist and Defendant Garcia created and posed as Lerner and communicated with Ms. Perdomo via electronic mail, as Lerner. While posing as Lerner, Defendant Garcia communicated with Ms. Perdomo in a manner intended to make Ms. Perdomo fearful of working at Biomeda.

33. It was further part of the scheme to defraud that Ms. Perdomo, in reliance upon the purported advice of the FBI and Lerner, would allow Defendant Garcia and Lerner access to and control over Biomeda, Biomeda's bank accounts, and Ms. Perdomo's bank accounts, and Ms. Perdomo would refrain from monitoring Biomeda's operations and activity on Biomeda's bank accounts and Ms. Perdomo's personal bank accounts.

34. It was further part of the scheme to defraud that once Defendant Garcia caused Ms. Perdomo to be warned not to monitor Biomeda's operations or Biomeda's bank accounts, that Defendant Garcia would transfer funds from Biomeda's bank accounts into bank accounts controlled by Defendant Garcia, deposit checks drawn on Biomeda's bank accounts into bank accounts controlled by Defendant Garcia, and deposit checks from Biomeda customers made payable to Biomeda into bank accounts controlled by Defendant Garcia.

35. It was further part of the scheme to defraud that Defendant Garcia, while posing as Lerner, would instruct Ms. Perdomo to deposit Ms. Perdomo's money into bank accounts that were supposedly "safe" places for Ms. Perdomo's money when, in fact, the bank accounts were controlled by Defendant Garcia.

36. It was further part of the scheme to defraud that Defendant Garcia would convert for her own use the money she unlawfully obtained as described in paragraphs thirty-five (35) and thirty-six (36).

37. For the purpose of executing the material scheme to defraud Ms. Perdomo and Biomeda, and to obtain money by materially false and fraudulent pretenses, representatives, promises, and omissions, Defendant Garcia did knowingly transmit and cause to be transmitted the following wire

_____
*Perdomo, et al. v. Garcia, et al. – Complaint for Violations of Racketeer and Corrupt Organizations Act (18 U.S.C. § 1961), and California State Law*

communication in interstate and foreign commerce:

    a.  On or about June 26, 2007, a wire transfer of $160,000 in proceeds from Ms. Perdomo's sale of a condominium in the Dominican Republic to bank account controlled by Defendant Garcia from Stanford Federal Credit Union in Palo Alto, CA to U.S. Bank in Millbrae, CA (via St. Paul, MN);

    b.  On or about August 13, 2007, a wire transfer of $180,954.62 in proceeds from Ms. Perdomo's sale of a condominium in the Dominican Republic to bank account controlled by Defendant Garcia from Wachovia Bank in New York, NY to U.S. Bank in Millbrae, CA;

    c.  On or about November 6, 2007, a wire transfer of $40,000 from a Biomeda bank account to bank account controlled by Defendant Garcia from Silicon Valley Bank in Santa Clara, CA to Wells Fargo Bank in Foster City, CA (via Kansas City, MO).

38. For the purpose of executing the material scheme to defraud Biomeda and Ms. Perdomo, and to obtain money by materially false and fraudulent pretenses, representations, promises, and omissions, Defendants Garcia did knowingly cause to be delivered by the United States Postal Service and private and commercial interstate carriers, the following:

    a.  On or about December 13, 2007, Frost National Bank check numbers 5400 for $1,481.16, and 5401 for $1,584.89, on the account of Genetex, Inc. from San Antonio, TX to Foster City, CA.

    b.  On or about December 20, 2007, Bank of America check number 4168083 for $12,154.68, on the account of Fisher Scientific, from Pittsburgh, PA to Foster City, CA.

    c.  On or about January 2, 2007, Frost National Bank check number 5481 for $186.20, on the account of Genetex, Inc. from San Antonio, TX to Foster City, CA.

39. As part of the scheme to defraud, Defendants Garcia and Doe 1 through 20 utilized Biomeda, unbeknown to Biomeda, to facilitate Defendants' criminal activities.

40. As a corporation, Biomeda constitute an enterprise under the definition provided in 18 U.S.C. § 1961(4), even though the enterprise was the victim of Defendants' criminal activity.  See National Organization for Women v. Scheidler, 510 U.S. 249, 259 n.5 (1994).

41. Said behavior of Defendants Garcia and Does 1 through 20, as stated above, establishes a pattern of

racketeering behavior knowingly understood and undertaken by these Defendants so named, and for the sole purpose of defrauding Ms. Perdomo and Biomeda.

42. Said behavior of Defendants Garcia and Does 1 through 20, as stated above, consisted of a series of related predicates extending over a substantial period of time, and was thus continuous.

43. From May 24, 2006 through June 12, 2006, Ms. Perdomo was out of the United States, in Santo Domingo, Dominican Republic.

44. From September 29, 2006 through October 16, 2006, Ms. Perdomo was out of the United States, in Santo Domingo, Dominican Republic.

45. In or around late October 2006, Ms. Perdomo rented an apartment at 874 Balboa Lane, Foster City, CA 94404 ("Balboa apartment").

46. From January 6, 2007 through January 9, 2007, Ms. Perdomo was out of the United States, in Santo Domingo, Dominican Republic.

47. From March 15, 2007 through March 19, 2007, Ms. Perdomo was out of the United States, in Costa Rica.

48. From June 13, 2007 through August 24, 2007, Ms. Perdomo was out of the United States, in Santo Domingo, Dominican Republic.

49. From October 13, 2007 through February 26, 2008, Ms. Perdomo was out of the United States, in Santo Domingo, Dominican Republic.  As part of the scheme to defraud, Defendant Garcia told Ms. Perdomo not to return to the United States, as Ms. Perdomo's life was allegedly in danger.

50. In or around November 2007, as part of the scheme to defraud, Defendant Garcia misrepresented to Defendant Oliveira that Ms. Perdomo would not be returning to the United States, and that Ms. Perdomo had relinquished all of her personal belongings to Defendant Garcia.

51. In or around November 2007, Defendant Oliveira, without investigating Defendant Garcia's statements, provided Defendant Garcia with a key to the Balboa apartment.

52. From on or about February 19, 2008 through on or about February 22, 2008, as part of the scheme to defraud, Defendants Garcia and Does 1 through 20 arranged for Ms. Perdomo to stay at the Casa de Campo hotel in La Romana, Dominican Republic.  Ms. Perdomo was instructed to remain at the hotel for three days, whereupon she was to be picked up and taken to an undisclosed location.  Upon

- 8 -

Perdomo, et al. v. Garcia, et al. – Complaint for Violations of Racketeer and Corrupt Organizations Act (18 U.S.C. § 1961), and California State Law

information and belief, Defendants Garcia and Does 1 through 20 made these arrangements in a conspiracy to kidnap Ms. Perdomo.

53. From on or about November 2007 to on or about March 2008, Defendant Garcia occupied the Balboa apartment without Ms. Perdomo's consent.

54. In or about December 2007 to in or about January 2008, Defendant Jose Garcia occupied the Balboa apartment without Ms. Perdomo's consent.

55. In or around March 2008, Defendant Garcia improperly disposed of Ms. Perdomo's furniture and personal property located in the Balboa apartment.  In or around January 2009, these items were recovered by the Foster City Police Department.

56. On or about October 2007, Defendant Garcia arranged for a storage locker in her name at a Public Storage facility, owned and operated by Defendant Public Storage, located at 2250 S. Delaware Street, San Mateo, CA 94403 ("Delaware Street Public Storage").

57. Upon information and belief, at all times relevant herein, Carrie Geier ("Ms. Geier") was a property manager at the Delaware Street Public Storage location.

58. Defendant Garcia instructed Ms. Perdomo not to provide Ms. Geier with her credit card information because "people would find her."  Ms. Geier overhead this entire conversation between Ms. Perdomo and Defendant Garcia, and was aware the storage locker would be used to store Ms. Perdomo's property.

59. On or about July 2007, Ms. Perdomo shipped furniture and other personal mementos from her Dominican Republic condominium to California.  Defendant Garcia placed the furniture in the Delaware Street Public Storage location.  Upon information and belief, Defendant Garcia had no intention of paying the rental on the storage locker at the Delaware Street Public Storage.

60. In or around January 2008, Ms. Geier, acting in the scope of her employment with Defendant Public Storage, removed Ms. Perdomo's furniture from the Delaware Street Public Storage and improperly conveyed the furniture to Sue Gilbert, an auctioneer ("Ms. Gilbert").  Upon information and belief, Ms. Gilbert sold Ms. Perdomo's furniture and turned over the proceeds of said auction to Defendant Public Storage.

61. In or around January 2008, as part of the scheme to defraud, Defendant Garcia misrepresented to

Linda Kenney, a former shareholder of Biomeda, that Ms. Perdomo was in the witness protection program and was no longer available.

62. In or around October 2006, Biomeda entered into a written lease for 1849 Bayshore with Defendant Mr. Zolfaghari's predecessor-in-interest, Caltag Holdings, LLC.  The term of the lease commenced on or about February 1, 2007.

63. Upon information and belief, in or around October 2007, without Plaintiffs' authorization, Defendant Garcia ceased making the rent payments for 1849 Bayshore.

64. Upon information and belief, on or about November 6, 2007, Defendant Mr. Zolfaghari filed an unlawful detainer action against Biomeda.  As Ms. Perdomo was outside the United States, she never received notice of this lawsuit.  Upon information and belief, on or about November 13, 2007, an answer to Mr. Zolfaghari's complaint was filed by Defendant Garcia, without Ms. Perdomo's knowledge or consent.

65. On or about January 9, 2008, Defendant Garcia filed a complaint in the matter <u>Garcia v. Zolfaghari</u>, San Mateo County Superior Court case number CIV469142.  This complaint was an unauthorized attempt by Defendant Garcia, as an individual plaintiff, to personally seize Biomeda's personal and intellectual property and convert it to her own personal use.  In paragraph eleven (11) of the complaint, Defendant Garcia misrepresented to the court she had purchased Biomeda's personal and intellectual property.

66. On or about February 27, 2008, one day after returning to the United States, Ms. Perdomo attempted to access the premises at 1849 Bayshore, but found herself locked out.  At this time, remaining inside 1849 Bayshore were a number of pieces of expensive and sensitive scientific machines, as well a number of clones which were the intellectual property of Biomeda.

67. After on or about February 27, 2008, Ms. Perdomo made numerous requests to Defendant Ms. Zolfaghari to allow her access to 1849 Bayshore to retrieve Biomeda's equipment and intellectual property.  Ms. Zolfaghari refused to allow Ms. Perdomo access 1849 Bayshore to allow Ms. Perdomo to remove Biomeda's valuable property.

68. Upon information and belief, Defendant Ms. Zolfaghari improperly disposed of Biomeda's equipment and destroyed Biomeda's intellectual property.

69. Upon information and belief, in or around December 2007, as part of the scheme to defraud, Defendant Garcia misrepresented to Marino Gueco ("Mr. Gueco"), branch manager for Defendant U.S. Bank, that Ms. Perdomo was dying of cancer and had returned to the Dominican Republic.

70. Mr. Gueco did not verify Defendant Garcia's misrepresentation, and allowed Defendant Garcia access to Plaintiffs' bank accounts, without any proof Ms. Perdomo was dying of cancer and had returned permanently to the Dominican Republic.

71. On or about February 26, 2008, Ms. Perdomo returned to the United States.  As alleged herein, as part of the scheme to defraud, Ms. Perdomo was told by Defendant Garcia to stay away from her business and home, and to not access her bank records.  Upon information and belief, Defendant Garcia received and intercepted the bank statements from Defendant U.S. Bank to Ms. Perdomo from at least June 2007 through approximately February 2008.

72. Ms. Perdomo never received a bank statement from Defendant U.S. Bank from at least June 2007 through approximately February 2008.

73. In or around early March 2008, upon returning back to the United States, Ms. Perdomo went to Defendant U.S. Bank's branch located at 475 El Camino Real, Millbrae, California.  Up until this point in time, Ms. Perdomo had no reason to believe she was the victim of fraud.  This was the first day Ms. Perdomo realized she had been a victim of fraud, and her money was missing from her personal bank account.  On the very same day, Ms. Perdomo informed Defendant U.S. Bank of the loss, disputed the unauthorized withdrawals from her account alleged herein, and requested her funds be restored.  Ms. Perdomo met with Mr. Gueco to formally inform Defendant U.S. Bank of her loss and to dispute the unauthorized withdrawals.

74. Upon information and belief, Mr. Geuco referred Ms. Perdomo's dispute to Al Cofer ("Mr. Cofer").  Upon information and belief, Mr. Cofer was an employee in Defendant U.S. Bank's security department in early 2008.

75. Defendant U.S. Bank refused to reimburse Ms. Perdomo's account for Defendant Garcia's fraud.

76. Defendant U.S. Bank failed to deliver or mail to Ms. Perdomo an explanation of their investigation within three (3) business days after the conclusion of said investigation.

77. Defendant U.S. Bank failed to give Ms. Perdomo notice of her right to reproduction of all documents

- 11 -

which Defendant U.S. Bank or its personnel relied on during their investigation.

78. Defendant U.S. Bank failed to provide Ms. Perdomo with a copy of all documents which Defendant U.S. Bank or its personnel relied on during their investigation.

79. Mr. Cofer refused to discuss Ms. Perdomo's loss, dispute, and request for reimbursement. Mr. Cofer refused to provide any information to Ms. Perdomo regarding the fraud perpetuated against her.

80. For a period ending on or about February 26, 2008, Defendant Garcia used Biomeda's corporate American Express Credit Card for her own personal use, without Plaintiffs' consent or knowledge, accumulating approximately $68,000 in charges.

81. For a period ending on or about February 26, 2008, Defendant Garcia used Ms. Perdomo's personal credit card issued by MBNA Bank for her own personal use, without Ms. Perdomo's consent or knowledge, accumulating approximately $80,000 in charges.

82. On or about June 1, 2009, Defendant Garcia was indicted by a federal Grand Jury on three counts of wire fraud in violation of 18 U.S.C. § 1343, and three counts of mail fraud in violation of 18 U.S.C. § 1343. See United States v. Garcia, No. CR-09-0570 (N.D. Cal. filed June 2, 2009). Upon information and belief, Defendant Garcia is awaiting trial on said Federal criminal charges.

83. Upon information and belief, Defendant Garcia is awaiting trial on State criminal fraud charges in the Superior Court of the County of San Mateo, State of California.

## **FIRST CLAIM**

### **(For Violation of the Racketeer and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., Mail Fraud Act, 18 U.S.C. § 1341, and Wire Fraud Act, 18 U.S.C.§ 1343, Against Defendants CARMEN GARCIA and DOE 1 through DOE 20)**

84. Plaintiffs re-allege each and every allegation in this Complaint and incorporate them by reference as if fully set forth herein.

85. At all relevant times, Defendants were "persons" and "enterprises" within the meaning of the Racketeer and Corrupt Practices Act ("RICO"), 18 U.S.C. §§ 1961(3)–(4) and 1962(c).

86. At all relevant times, Defendants were engaged in, and its activities affected, interstate and foreign commerce, within the meaning of RICO, 18 U.S.C. § 1962(c).

87. Defendants initiated, and continued for a substantial period of time, practices designed to defraud

1    Ms. Perdomo and Biomeda.

2    88. At all relevant times, Defendants, and all other conspirators associated with Defendants, conducted

3    and/or participated, directly and/or indirectly, in the conduct of Defendants' affairs through a

4    "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. § 1961(5), in violation of

5    RICO, 18 U.S.C. § 1962(c).

6    89. Specifically, Defendants engaged in "racketeering activity" by engaging in the acts set forth above.

7    Each defendant conducted or participated, directly or indirectly, in the conduct of the enterprise's

8    affairs, and conspired to do so, through a pattern of racketeering activity, as more fully described in

9    Paragraphs 29 through 41, and within the meaning of 18 U.S.C.§ 1961(5), that is, Mail Fraud in

10   violation of 18 U.S.C. § 1341, and Wire Fraud in violation of 18 U.S.C. § 1343.

11   90. The acts set forth above, or the continued fraudulent conversion of Plaintiffs' property by means of

12   mail and wire, constitute a violation of 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1341 (mail

13   fraud).

14   91. The acts of racketeering constituted a "pattern of racketeering activity" within the meaning of 18

15   U.S.C. § 1961(5).  The acts were related to each other by virtue of common participants, a common

16   victim (Biomeda and Ms. Perdomo), a common method of commission (by mail, wire, and

17   electronic mail), and the common purpose and common result of defrauding Biomeda and Ms.

18   Perdomo.  The common result also included the enrichment of Defendants.

19   92. Defendants' fraudulent scheme persisted for many months.

20   93. In furtherance of Defendants' fraudulent scheme, Defendant Garcia, by impersonating an attorney,

21   engaged in the unlawful practice of law in violation of California Business & Professions Code

22   section 6125 *et seq.*

23   94. In furtherance of Defendants' fraudulent scheme by the conduct alleged herein, Defendants violated

24   California Penal Code sections 484 and 487, by committed grand theft by false pretenses.

25   95. As a result of Defendants' misconduct and violation of RICO, Biomeda and Ms. Perdomo lost

26   thousands of dollars in the fraudulent scheme.

27   96. Pursuant to RICO, Biomeda and Ms. Perdomo are entitled to recover threefold their damages, plus

28   costs and attorneys' fees from Defendants.

*Perdomo, et al. v. Garcia, et al. – Complaint for Violations of Racketeer and Corrupt Organizations Act (18 U.S.C. § 1961), and California State Law*

97. Defendants' use of the mail and wire to defraud Biomeda and Ms. Perdomo violates the Mail Fraud Act and Wire Fraud Act. Defendants, having devised a scheme, obtained property from Ms. Perdomo and Biomeda by means of fraudulent pretenses by mail and over the telephone.

98. By engaging in mail and wire fraud, Defendants further violated the Racketeer and Corrupt Organizations Act. As defined, "racketeering" includes the use and pattern of mail or wire fraud to receive income. Defendants received income derived from a pattern of mail and wire fraud.

99. Defendants' actions violate the Racketeer and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, the Mail Fraud Act, 18 U.S.C. § 1341, and the Wire Fraud Act, 18 U.S.C. § 1343. 18 U.S.C. § 1962 states that "[i]t shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt . . . to use or invest . . . the proceeds of such income." The Mail Fraud Act prohibits any article sent by post in furtherance of a scheme to obtain "money or property by means of false or fraudulent pretenses." Further, the Wire Fraud Act prohibits "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," communicated by writing or sound via wire.

100.   Defendants, as part of a scheme to defraud, did intentionally and violate these federal laws.

101.   Defendants have engaged in acts, each of which is a necessary part of their scheme to defraud Ms. Perdomo and Biomeda of property, each of which were known by Defendants to be false or fraudulent at the time they were made, and each of which is of a kind that would result in the loss of Plaintiffs' property.

102.   18 U.S.C. § 1962 allows that any person injured in his property because of a violation of said section may sue in United States District Court, "and shall recover threefold the damages [s]he sustains and the cost of the suit, including a reasonable attorney's fee."

103.   As a direct and proximate cause of these violations, Plaintiffs were and continue to be damaged in an amount according to proof, including, without limitation, statutory damages and actual damages.

104.   Pursuant to 18 U.S.C. § 1962, Plaintiffs are entitled to recover actual damages as a result of Defendants' violations of the Wire Fraud and Racketeer and Corrupt Organizations Acts, in an

1   amount to be determined at trial, statutory damages, and attorneys' fees and costs.

2   **WHEREFORE**, Plaintiffs pray for judgment as follows:

3   As to the First Claim:

4   A. For restitution of all monies due to Plaintiffs or wrongfully taken by Defendants from Plaintiffs,

5   and disgorged profits from the unlawful scheme of Defendants;

6   B. For compensatory damages to Plaintiffs;

7   C. For interest;

8   D. Actual and statutory damages to Plaintiffs for violations of Racketeer and Corrupt Organization

9   Act and Wire Fraud Act;

10   E. For appropriate injunctive and equitable relief;

11   F. Punitive damages to Plaintiffs according to proof at trial;

12   G. Attorneys' fees and expenses of litigation to the extent provided by law;

13   H. Costs of suit; and

14   I. Such other and further legal and equitable relief as this Court may deem proper.

15   <u>**SECOND CLAIM**</u>

16   <u>**(For Violation of Mail Fraud Act, 18 U.S.C. § 1341, and Wire Fraud Act, 18 U.S.C.§ 1343, and**</u>

17   <u>**Civil Forfeiture Act, 18 U.S.C. § 981, Against Defendants CARMEN GARCIA and DOE 1**</u>

18   <u>**through DOE 20)**</u>

19   105.   Plaintiffs re-allege each and every allegation in this Complaint and incorporate them by

20   reference as if fully set forth herein.

21   106.   Defendants' use of the mail and telephone to deprive Plaintiffs of their property violates the Mail

22   Fraud Act and Wire Fraud Act.   Defendants, having devised a scheme, obtained property from

23   Plaintiffs by means of false and fraudulent pretenses.   Defendants made fraudulent pretenses by

24   telephone and wire to Ms. Perdomo, namely: a federal crime was being committed against Biomeda

25   and Ms. Perdomo, and the Federal Bureau of Investigation ("FBI") was investigating the reported

26   crime; someone might want to kill Ms. Perdomo; Ms. Perdomo should not talk to anyone about the

27   purported FBI investigation; Ms. Perdomo should not check her bank accounts; Ms. Perdomo should

28   limit her visits to Biomeda; Ms. Perdomo should stay home; and, that the FBI referred an attorney

*Perdomo, et al. v. Garcia, et al. – Complaint for Violations of Racketeer and Corrupt Organizations Act (18 U.S.C. § 1961), and California State Law*

named Lerner to Ms. Perdomo to represent her in connection with issues related to the purported crime being committed against Ms. Perdomo and Biomeda, while all along posing as Lerner and communicating with Ms. Perdomo via electronic mail, as Lerner.

107. Defendants continued their fraudulent scheme by using the mail and wire to deprive Plaintiffs of their property, as alleged in Paragraphs thirty-seven (37) and thirty-eight (38).

108. By engaging in mail and wire fraud, Defendants are subject to Civil Forfeiture under 18 U.S.C. § 981, *et seq.* Under this Act, an individual may move for a judicial proceeding requiring that a party who violated 18 U.S.C. § 1341 or § 1343 forfeit their rights to the property acquired through fraudulent means, to the United States Government. As the Act states, property subject to forfeiture to the United States includes: "any property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, from a violation of . . . section 1341 (relating to mail fraud); or section 1343 (relating to wire fraud) . . . ."

109. Defendants' fraudulent misconduct, achieved through intentional misrepresentation via mail, telephone, and facsimile across state lines, violates the Mail Fraud Act and Wire Fraud Act. As such, Defendants, as the Act intends, should not be able to profit from said wrongdoing.

110. Defendants fraudulent misconduct, achieved through intentional misrepresentation via mail, telephone, and facsimile across state lines, resulted in Defendants' enrichment.

111. Ms. Perdomo relied on Defendants' intentional misrepresentations via telephone and wire, and after a pattern of wire fraud, heeded Defendants' warnings, without the knowledge of Defendants' fraudulent intentions, namely that Defendants intended to deprive Plaintiffs of their property.

112. As a direct and proximate result of these violations of federal law, Plaintiffs were, and continue to be, damages in an amount according to proof, including, without limitations, statutory damages and actual damages, including Defendants' civil forfeiture of the property at issue.

**WHEREFORE**, Plaintiffs pray for judgment as follows:

As to the Second Claim:

A. For restitution of all monies due to Plaintiffs or wrongfully taken by Defendants from Plaintiffs, and disgorged profits from the unlawful business practices or enrichment of Defendants;

B. For compensatory damages;

*Perdomo, et al. v. Garcia, et al. – Complaint for Violations of Racketeer and Corrupt Organizations Act (18 U.S.C. § 1961), and California State Law*

C.  For interest;

D.  Actual and statutory damages to Plaintiffs for violations of the Wire Fraud Act and Civil Forfeiture Act;

E.  For appropriate injunctive and equitable relief;

F.  Punitive damages, according to proof at trial;

G.  Attorneys fees and expenses of litigation to the extent provided by law;

H.  Costs of suit; and

I.  Such other and further legal and equitable relief as this Court may deem proper.

## THIRD CLAIM

### (For Fraud/Intentional Misrepresentation in Violation of Cal. Civil Code §§ 1709, Against Defendants CARMEN GARCIA and DOE 1 through DOE 20)

113.    Plaintiffs re-allege each and every allegation in this Complaint and incorporate them by reference as if fully set forth herein.

114.    California Civil Code section 1709 specifically states tortious fraud or deceit occurs when a party "willfully deceives another with the intent to induce [her] to alter [her] position to [her] injury or risk."

115.    As alleged herein, Defendants engaged in certain conduct and made, in sum and substance, certain material pretenses and false representatives, promises, and omissions, including, but not limited to the following:

  a.  Defendant Garcia told Ms. Perdomo a federal crime was being committed against Biomeda and Ms. Perdomo, and the Federal Bureau of Investigation ("FBI") was investigating the reported crime;

  b.  Defendant Garcia told Ms. Perdomo someone might want to kill Ms. Perdomo;

  c.  Defendant Garcia told Ms. Perdomo she should not talk to anyone about the purported FBI investigation;

  d.  Defendant Garcia told Ms. Perdomo she should not check her bank accounts;

  e.  Defendant Garcia told Ms. Perdomo she should limit her visits to Biomeda;

  f.  Defendant Garcia told Ms. Perdomo she should stay home;

*Perdomo, et al. v. Garcia, et al. – Complaint for Violations of Racketeer and Corrupt Organizations Act (18 U.S.C. § 1961), and California State Law*

g.   Defendant Garcia told Ms. Perdomo the FBI referred an attorney named Dave Lerner ("Lerner") to Ms. Perdomo to represent her in connection with issues related to the purported crime being committed against Ms. Perdomo and Biomeda;

h.   Defendant Garcia used the mail and wire to deprive Plaintiffs of their property, as alleged in Paragraphs thirty-seven (37) and thirty-eight (38);

i.   Defendant Garcia misappropriated Biomeda's funds by using Biomeda's credit card without Plaintiffs' consent;

j.   Defendant Garcia deprived Ms. Perdomo of her property by using Ms. Perdomo's personal credit card without Ms. Perdomo's consent.

116.   At all relevant times, Defendant Garcia knew her statements were false.

117.   Defendant Garcia intended to induce Plaintiffs to alter their position to their injury and risk.

118.   Plaintiffs justifiably relied on Defendant Garcia's representations.

119.   As a direct and proximate result of the acts and/or omissions by Defendants, Plaintiffs suffered damages in an amount according to proof.

120.   Defendants' conduct was malicious, deceitful, and oppressive; therefore Plaintiffs are entitled to punitive damages.   Plaintiffs allege Defendants' conduct, as described above, was done with oppression, fraud, and malice, as defined in California Civil Code section 3294 and Plaintiffs should recover, in addition to actual damages, damages to make an example of and to punish Defendants.

WHEREFORE, Plaintiffs pray for judgment as follows:

As to the Third Claim:

A.   For general and special damages in an amount according to proof;

B.   For costs of suit;

C.   For restitution of all ill-gotten profits;

D.   For punitive damages pursuant to California Civil Code section 3294;

E.   For imposition of a constructive trust;

F.   For costs of suit; and

G.   For such other and further relief as this Court deems just and proper.

## **FOURTH CLAIM**

1

**(For Negligence, Against All Defendants)**

2  121.   Plaintiffs re-allege each and every allegation in this Complaint and incorporate them by

3  reference as if fully set forth herein.

4  122.   Defendants at all times mentioned herein had a common law duty, as well as a duty arising under

5  California Civil Code section 1708, not to cause an unreasonable risk of injury to the person or

6  property of Plaintiffs.

7  123.   Upon information and belief, Defendants Coldwell Banker and Oliveira, at all times relevant

8  herein, were licensed real estate brokers in the State of California.  Thus, with this broker status,

9  Defendants Coldwell Banker and Oliveira had higher fiduciary duties to Ms. Perdomo, including and

10  obligation to act in good faith and honesty.

11  124.   By reason of the landlord-tenant relationship between Plaintiffs and Defendant Javad Zolfaghari,

12  Defendant Javad Zolfaghari and his agents owed Plaintiffs the duty to exercise reasonable care in the

13  ownership, operation, management, renting, and control of 1849 Bayshore.

14  125.   Defendants Coldwell Banker and Oliveira breached their duty to Ms. Perdomo by acts including

15  but not limited to, giving Defendant Garcia a key to the Balboa Apartment without Ms. Perdomo's

16  permission, and without verifying the veracity of Defendant Garcia's statements.

17  126.   Defendant U.S. Bank breached their duty to Ms. Perdomo by acts including but not limited to,

18  failing to verify Defendant Garcia's misrepresentation, and allowing Defendant Garcia access to

19  Plaintiffs' bank accounts, without any proof Ms. Perdomo was dying of cancer and had returned

20  permanently to the Dominican Republic.

21  127.   Defendants Javad Zolfaghari and Julia Zolfaghari breached the duty of reasonable care owed Ms.

22  Perdomo by acts including but not limited to, refusing Ms. Perdomo access to 1849 Bayshore to

23  remove Plaintiffs' valuable personal and intellectual property.

24  128.   As a direct and proximate result of the conduct alleged herein, Defendants breached the above

25  duty owed to Plaintiffs.

26  129.   At all times mentioned herein, upon information and belief, Plaintiffs conducted themselves in a

27  reasonable manner and took the same precautions a reasonably prudent person would to secure their

28  financial and property interests.  Plaintiffs thus fulfilled any affirmative dues required of them.

130.    As a direct and proximate result of the aforementioned breaches by Defendants, Plaintiffs suffered damages in an amount according to proof.

131.    As a further direct and proximate result of the aforementioned breaches by Defendants, Ms. Perdomo suffered severe emotional distress, including but not limited to, discomfort, inconvenience, annoyance, humiliation, fear, anxiety, all to her general detriment, and in an amount according to proof.

132.    Defendants' negligence was a substantial factor in causing Ms. Perdomo's severe emotional distress.

133.    The aforementioned duties breached by Defendants were breached with knowing and reckless disregard for Plaintiffs' rights and therefore justify an award of damages.

134.    Defendants' conduct was malicious, deceitful, and oppressive; therefore Plaintiffs are entitled to punitive damages.  Plaintiffs allege Defendants' conduct, as described above, was done with oppression, fraud, and malice, as defined in California Civil Code section 3294 and Plaintiffs should recover, in addition to actual damages, damages to make an example of and to punish Defendants.

WHEREFORE, Plaintiffs pray for judgment as follows:

As to the Fourth Claim:

A.  For damages in an amount according to proof;

B.  For loss of earnings in an amount according to proof;

C.  For punitive damages pursuant to California Civil Code section 3294;

D.  For costs of suit; and

E.  For such other and further relief as this Court deems just and proper.

### FIFTH CLAIM

### (For Negligent Infliction of Emotional Distress, Against All Defendants)

135.    Plaintiffs re-allege each and every allegation in this Complaint and incorporate them by reference as if fully set forth herein.

136.    As alleged herein, Defendants at all times mentioned herein had a common law duty, as well as a duty arising under California Civil Code section 1708, not to cause an unreasonable risk of injury to the person or property of Ms. Perdomo.

137.   As a direct and proximate result of the conduct alleged herein, Defendants breached the above duty owed to Ms. Perdomo.

138.   As a further direct and proximate result of the aforementioned breaches by Defendants, Ms. Perdomo suffered severe emotional distress, including but not limited to, discomfort, inconvenience, annoyance, humiliation, fear, anxiety, all to her general detriment, and in an amount according to proof.

139.   Defendants' negligence was a substantial factor in causing Ms. Perdomo's severe emotional distress.

140.   The aforementioned duties breached by Defendants were breached with knowing and reckless disregard for Ms. Perdomo's rights and therefore justify an award of damages.

WHEREFORE, Plaintiffs pray for judgment as follows:

As to the Fifth Claim:

A.  For damages in an amount according to proof;

B.  For costs of suit; and

C.  For such other and further relief as this Court deems just and proper.

## SIXTH CLAIM

### (For Breach of Contract, Against Defendants U.S. BANCORP and DOE 1 through DOE 20)

141.   Plaintiffs re-allege each and every allegation in this Complaint and incorporate them by reference as if fully set forth herein.

142.   As alleged herein, Ms. Perdomo entered into a written contract with Defendant U.S. Bank (the "Agreement").

143.   As alleged herein, Ms. Perdomo has fulfilled all of the conditions of Agreement.

144.   As alleged herein, by failing to properly investigate Defendant Garcia's fraud, and restore funds to Ms. Perdomo's account, Defendant U.S. Bank breached their obligations under the Agreement.

145.   As a direct and proximate result of Defendant's breach of contract, and to enforce their rights pursuant to said contracts, Plaintiffs have suffered actual damages in an amount according to proof to be shown at trial.

**WHEREFORE**, Plaintiffs pray for judgment as follows:

As to the Sixth Claim:

A. For damages in an amount according to proof;

B. For costs of suit; and

C. For such other and further relief as this Court deems just and proper.

## SEVENTH CLAIM

### (For Breach of Contract from Bank's Failure to Act in Good Faith, Against Defendants U.S. BANCORP and DOE 1 through DOE 20)

146.    Plaintiffs re-allege each and every allegation in this Complaint and incorporate them by reference as if fully set forth herein.

147.    As alleged herein, Ms. Perdomo entered into a written contract with Defendant U.S. Bank (the "Agreement").

148.    As alleged herein, the Agreement contained terms obligating Defendant U.S. Bank to act in good faith.

149.    As alleged herein, by failing to properly investigate Defendant Garcia's fraud, and restore funds to Ms. Perdomo's account, Defendant U.S. Bank breached their obligations under the Agreement to act in good faith.

150.    As a direct and proximate result of Defendant's failure to act in good faith, Plaintiffs have suffered actual damages in an amount according to proof to be shown at trial.

WHEREFORE, Plaintiffs pray for judgment as follows:

As to the Seventh Claim:

A. For damages in an amount according to proof;

B. For costs of suit; and

C. For such other and further relief as this Court deems just and proper.

## EIGHTH CLAIM

### (For Unfair Business Practices in Violation of Cal. Bus. & Prof. Code § 17200 *et seq.*, Against Defendants U.S. BANCORP, COLDWELL BANKER LLC, and DOE 1 through DOE 20)

151.    Plaintiffs re-allege each and every allegation in this Complaint and incorporate them by reference as if fully set forth herein.

152.    The California Unfair Competition Law, California Business and Professions Code section 17200 *et seq.* ("UCL"), defines unfair competition to include any "unlawful," "unfair," or "fraudulent" business act or practice. CAL. BUS & PROF. CODE § 17200.

153.    A single business act is actionable under the California UCL.

154.    Defendants' conduct as described herein constitutes unfair business practices for the reasons set forth below, without limitation:

155.    Defendant U.S. Bank's business act of failing to timely investigate and reimburse Ms. Perdomo for the funds stolen from her account by Defendant Garcia is unfair as it violates the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*

156.    Defendant U.S. Bank's business act of failing to timely investigate and reimburse Ms. Perdomo for the funds stolen from her account by Defendant Garcia is unfair as it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers.

157.    Defendant U.S. Bank's business act of failing to timely investigate and reimburse Ms. Perdomo for the funds stolen from her account by Defendant Garcia is unfair as the impact on Ms. Perdomo far outweighs the possible reasons, justifications, and motives of Defendant U.S. Bank.

158.    Defendant Coldwell Banker's business act of providing Defendant Garcia with access to Ms. Perdomo's property without permission or verification is unfair as it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers.

159.    Defendant Coldwell Banker's business act of providing Defendant Garcia with access to Ms. Perdomo's property without permission or verification is unfair as the impact on Ms. Perdomo far outweighs the possible reasons, justifications, and motives of Defendant U.S. Coldwell Banker.

160.    Defendants' ongoing business practices are fraught with material misrepresentations and omissions likely to deceive customers.

161.    As a result of, and in reliance on, Defendants' unlawful and fraudulent business practices, Ms. Perdomo has suffered injury in fact and has lost money and property.

162.    Pursuant to California Business and Processions Code section 17200 et seq., Ms. Perdomo is entitled to enjoin the practice of refusing to fully investigate customers' claims for violations of the

1   Electronic Funds Transfer Act, and to obtain restitution of all funds obtained by Defendant U.S.

2   Bank by reason of and through the use of these unlawful, unfair, or fraudulent acts and practices.

3   163.   Pursuant to California Code of Civil Procedure section 1021.5, Ms. Perdomo is entitled to

4   recover her reasonable attorney's fees, costs, and expenses incurred in bringing this action.

5   WHEREFORE, Plaintiffs pray for judgment as follows:

6   As to the Eighth Claim:

7   A.   For restitution of all monies due Ms. Perdomo or wrongfully taken by Defendants from Ms.

8   Perdomo, and disgorged profits from the unlawful business practices of Defendants;

9   B.   For compensatory damages in an amount according to proof;

10   C.   For interest;

11   D.   For actual and statutory damages for violations of California State law;

12   E.   For appropriate injunctive and equitable relief;

13   F.   For punitive damages according to proof at trial;

14   G.   For attorneys fees and expenses of litigation to the extent provided by law;

15   H.   For costs of suit; and

16   I.   For such other and further relief as this Court deems just and proper.

17   **NINTH CLAIM**

18   **(For Conversion in Violation of Cal. Civil Code § 3336 *et seq.*, Against Defendants CARMEN**

19   **GARCIA, U.S. BANCORP, JAVAD ZOLFAGHARI, JULIA ZOLFAGHARI, PUBLIC**

20   **STORAGE FRANCHISE, INC., and DOE 1 through DOE 20)**

21   164.   Plaintiffs re-allege each and every allegation in this Complaint and incorporate them by

22   reference as if fully set forth herein.

23   165.   Ms. Perdomo has a right to possess the funds illegally transmitted by wire transfer by Defendant

24   Garcia.

25   166.   Ms. Perdomo has a right to possess her funds and property improperly converted by Defendant

26   Garcia for her own personal use.

27   167.   Ms. Perdomo has a right to possess the funds Defendant U.S. Bank failed to restore to Ms.

28   Perdomo's account.

168.  Ms. Perdomo has a right to possess the personal belongings improperly removed from the Delaware Street Public Storage by Defendant Public Storage Franchise.

169.  Plaintiffs have a right to possess the personal property improperly removed from 1849 Bayshore by Defendants Javad Zolfaghari and Julia Zolfaghari.

170.  Defendants' claims are without any right, and Defendants have no right, title, estate, lien, or interest in any of the personal property identified herein.

171.  Despite repeated requests, Plaintiffs have been denied use of this personal property since on or about February 26, 2008.

172.  As a direct, foreseeable, and proximate result of Defendants' acts, Plaintiffs have suffered actual damage.  Defendants' conduct as alleged herein has caused Plaintiffs damages in an amount according to proof to be shown at trial.

173.  As a direct and proximate result of Defendants' acts and omissions, Ms. Perdomo suffered severe emotional distress, including but not limited to, discomfort, inconvenience, annoyance, humiliation, fear, anxiety, all to her general detriment, and in an amount according to proof.

174.  As a direct and proximate result of Defendants' wrongful acts alleged herein, Plaintiffs have incurred and will continue to incur costs as a result of prosecuting this cause of action.

175.  Defendants' conduct was malicious, deceitful, and oppressive; therefore Plaintiffs are entitled to punitive damages.  Plaintiffs allege Defendants' conduct, as described above, was done with oppression, fraud, and malice, as defined in California Civil Code sections 3294 and 3288, and Plaintiffs should recover, in addition to actual damages, damages to make an example of and to punish Defendants.

WHEREFORE, Plaintiffs pray for judgment as follows:

As to the Ninth Claim:

A.  For compensatory damages in an amount according to proof;

B.  For right to repossession of converted property;

C.  For emotional distress damages;

D.  For punitive damages pursuant to Civil Code section 3294;

E.  For costs of suit; and

*Perdomo, et al. v. Garcia, et al. – Complaint for Violations of Racketeer and Corrupt Organizations Act (18 U.S.C. § 1961), and California State Law*

F.  For such other and further relief as the court deems just and proper.

## TENTH CLAIM

### (For Intentional Infliction of Emotional Distress Against All Defendants)

176.    Plaintiffs re-allege each and every allegation in this Complaint and incorporate them by reference as if fully set forth herein.

177.    Defendants' acts, and failures to act, as alleged herein are extreme and outrageous conduct beyond all bounds of decency.

178.    Defendants' conduct was knowing, intentional, and willful.  Defendants had full knowledge or substantial certainty of the extreme mental distress that their conduct would cause Ms. Perdomo. Defendants acted with intentional disregard for the reasonably foreseeable consequences of their actions.

179.    Defendant Garcia acted with the intention of causing, and/or reckless disregard for the possibility of causing, emotional distress to Ms. Perdomo when she fraudulently deprived Ms. Perdomo of her property, and destroyed her business.  Said actions are evidence of Defendants' true intent and motivations.

180.    Defendant U.S. Bank acted with the intention of causing, and/or reckless disregard for the possibility of causing, emotional distress to Ms. Perdomo when it refused to conduct an investigation into Defendant Garcia's fraud, failed to provide a timely response to Ms. Perdomo's dispute, refused to communicate with Ms. Perdomo regarding her dispute, and failed to restore the funds fraudulently taken from Ms. Perdomo's account.  Said actions are evidence of Defendants' true intent and motivations.

181.    Defendant Public Storage acted with the intention of causing, and/or reckless disregard for the possibility of causing, emotional distress to Ms. Perdomo when it removed her furniture and personal mementos from the storage unit and sold them.  Said actions are evidence of Defendants' true intent and motivations.

182.    Defendants Javad Zolfaghari and Julia Zolfaghari acted with the intention of causing, and/or reckless disregard for the possibility of causing, emotional distress to Ms. Perdomo when they refused to allow Ms. Perdomo access to 1849 Bayshore to retrieve Biomeda's valuable intellectual

1     property.  Said actions are evidence of Defendants' true intent and motivations.

2     183.    Defendants Coldwell Banker and Oliveira acted with the intention of causing, and/or reckless

3     disregard for the possibility of causing, emotional distress to Ms. Perdomo when they provided

4     Defendant Garcia with a key to the Balboa apartment without Ms. Perdomo's consent.  Said actions

5     are evidence of Defendants' true intent and motivations.

6     184.    As a direct and proximate result of Defendants' acts and omissions, Ms. Perdomo has suffered

7     extreme mental distress to his general detriment in an amount according to proof.  Ms. Perdomo has

8     suffered worry and anxiety over the loss of her company, her money, and her property.

9     185.    Defendants' conduct was malicious, deceitful, and oppressive; therefore Ms. Perdomo is entitled

10    to punitive damages.  Ms. Perdomo alleges Defendants' conduct, as described above, was done with

11    oppression, fraud, and malice, as defined in California Civil Code section 3294 and Ms. Perdomo

12    should recover, in addition to actual damages, damages to make an example of and to punish

13    Defendants.

14    **WHEREFORE**, Plaintiffs pray for judgment as follows:

15    As to the Tenth Claim:

16    A.  For damages in an amount according to proof;

17    B.  For punitive damages pursuant to Civil Code section 3294;

18    C.  For costs of suit; and

19    D.  For such other and further relief as the court deems just and proper.

20    <u>**ELEVENTH CLAIM**</u>

21    <u>**(For False Imprisonment Against Defendants CARMEN GARCIA and DOE 1 through DOE 20)**</u>

22    186.    Plaintiffs re-allege each and every allegation in this Complaint and incorporate them by

23    reference as if fully set forth herein.

24    187.    As alleged herein, Defendants confined Ms. Perdomo by means of fraud or deceit, threat of

25    force, and other means of unreasonable duress, including but not limited to telling Ms. Perdomo: a

26    federal crime was being committed against Biomeda and Ms. Perdomo, and the Federal Bureau of

27    Investigation ("FBI") was investigating the reported crime; someone might want to kill Ms.

28    Perdomo; Ms. Perdomo should not talk to anyone about the purported FBI investigation; Ms.

Perdomo she should not check her bank accounts; Ms. Perdomo she should limit her visits to Biomeda; Ms. Perdomo she should stay home; and instructing Ms. Perdomo to remain at the Casa de Campo hotel in La Romana, Dominican Republic, for three days.

188.    As alleged herein, Ms. Perdomo's confinement was nonconsensual.

189.    As alleged herein, Defendants intended to confine Ms. Perdomo.

190.    As alleged herein, Defendants' confinement of Ms. Perdomo was without lawful privilege.

191.    As alleged herein, Defendants' confinement of Ms. Perdomo was for an appreciable length of time.

192.    As a direct and proximate result of Defendant's acts and omissions, Plaintiffs have suffered actual damages in an amount according to proof to be shown at trial.

193.    As a direct and proximate result of Defendants' acts and omissions, Ms. Perdomo has suffered extreme mental distress to his general detriment in an amount according to proof.  Ms. Perdomo has suffered worry and anxiety over the loss of her company, her money, and her property.

194.    Defendants' conduct was malicious, deceitful, and oppressive; therefore Ms. Perdomo is entitled to punitive damages.  Ms. Perdomo alleges Defendants' conduct, as described above, was done with oppression, fraud, and malice, as defined in California Civil Code section 3294 and Ms. Perdomo should recover, in addition to actual damages, damages to make an example of and to punish Defendants.

195.    Ms. Perdomo has incurred and will continue to incur attorney's fees as a result of prosecuting this cause of action.

WHEREFORE, Plaintiffs pray for judgment as follows:

As to the Eleventh Claim:

A.  For damages in an amount according to proof;

B.  For punitive damages pursuant to Civil Code section 3294;

C.  For reasonable attorneys fees, pursuant to Civil Code section 1021, and costs of suit; and

D.  For such other and further relief as the court deems just and proper.

### TWELFTH CLAIM

### (For Constructive Fraud in Violation of California Civil Code § 1573, Against Defendants

**CARMEN GARCIA, U.S. BANCORP, and DOE 1 through DOE 20)**

196.   Plaintiffs re-allege each and every allegation in this Complaint and incorporate them by reference as if fully set forth herein.

197.   California Civil Code section 1573 defines constructive fraud as any breach of duty, without an actual fraudulent intent, which gains an advantage to the person in fault, by misleading another to her prejudice.

198.   By virtue of the customer/client relationship between Defendant U.S. Bank and Plaintiffs, a confidential or fiduciary relationship existed at all relevant times herein.  Defendant U.S. Bank owed Plaintiffs a duty to disclose all material facts within its knowledge relating to transactions with Plaintiffs.

199.   Upon information and belief, Defendant U.S. Bank never intended on reimbursing Ms. Perdomo for Defendant Garcia's fraud.  Defendant U.S. Bank failed to disclose this material fact to Ms. Perdomo.

200.   Defendant U.S. Bank refused to communicate with Ms. Perdomo regarding the status of the investigation of Defendant Garcia' fraud, thus concealing material facts it had a duty to disclose.

201.   Defendant U.S. Bank breached this duty to Plaintiffs by the conduct alleged herein, including but not limited to, failing to fully investigate Defendant Garcia's fraudulent transfers, failing to provide Ms. Perdomo with an explanation of its findings as required by law, failing to communicate with Ms. Perdomo regarding the investigation, failing to reimburse Ms. Perdomo for Defendant Garcia's fraud, and failing to inform Ms. Perdomo it never intended to reimburse Ms. Perdomo for Defendant Garcia's fraud.

202.   Defendant U.S. Bank's breach of its fiduciary duty to Plaintiffs led to an advantage gained by Defendant U.S. Bank as Ms. Perdomo was ultimately not reimbursed for Defendant Garcia's fraud.

203.   Ms. Perdomo justifiably relied on Defendant U.S. Bank's representation a full and complete investigation would be conducted.

204.   By virtue of the employer/employee relationship between Defendant Garcia and Plaintiffs, a confidential or fiduciary relationship existed at all relative times herein.

205.   Defendant Garcia breached this duty to Plaintiffs by the conduct alleged herein.

206.    Defendant Garcia's breach of her duty to Plaintiffs led to an advantage gained by Defendant Garcia as Defendant Garcia improperly deprived Plaintiffs of money and personal property.

207.    Plaintiffs justifiably relied on Defendant Garcia's representations.

208.    As a direct and proximate result of Defendant's acts and omissions, Plaintiffs have suffered actual damages in an amount according to proof to be shown at trial.

209.    Defendants' conduct was malicious, deceitful, and oppressive; therefore Ms. Perdomo is entitled to punitive damages.  Ms. Perdomo alleges Defendants' conduct, as described above, was done with oppression, fraud, and malice, as defined in California Civil Code section 3294 and Ms. Perdomo should recover, in addition to actual damages, damages to make an example of and to punish Defendants.

WHEREFORE, Plaintiffs pray for judgment as follows:

As to the Twelfth Claim:

A.  For compensatory damages in an amount according to proof;

B.  For punitive damages pursuant to Civil Code section 3294;

C.  For costs of suit; and

D.  For such other and further relief as the court deems just and proper.

## THIRTEENTH CLAIM

### (For Trespass Against Defendants CARMEN GARCIA, JOSE GARCIA, and DOE 1 through DOE 20)

210.    Plaintiffs re-allege each and every allegation in this Complaint and incorporate them by reference as if fully set forth herein.

211.    At all relevant times mentioned herein, Ms. Perdomo held a possessory interest in the Balboa Apartment.

212.    Defendants and their agents intentionally entered the Balboa Apartment without Ms. Perdomo's permission.

213.    As a direct, foreseeable, and proximate result of Defendants' acts, Ms. Perdomo suffered actual damage to her property.  Defendants' conduct as alleged herein has caused Ms. Perdomo damages in an amount according to proof to be shown at trial.

214.   As a direct, foreseeable, and proximate result of Defendants' wrongful acts alleged herein, Ms. Perdomo has incurred and will continue to incur costs as a result of prosecuting this action.

215.   As a direct, foreseeable, and proximate result of Defendants' acts and omissions, Ms. Perdomo suffered severe emotional distress, including, but not limited to, discomfort, inconvenience, annoyance, humiliation, fear, anxiety, all to her general detriment, and in an amount according to proof.

216.   Defendants' conduct was malicious, deceitful, and oppressive; therefore Ms. Perdomo is entitled to punitive damages.  Ms. Perdomo alleges Defendants' conduct, as described above, was done with oppression, fraud, and malice, as defined in California Civil Code section 3294 and Ms. Perdomo should recover, in addition to actual damages, damages to make an example of and to punish Defendants.

WHEREFORE, Plaintiffs pray for judgment as follows:

As to the Thirteenth Claim:

A.  For compensatory damages in an amount according to proof;

B.  For costs of suit;

C.  For punitive damages pursuant to California Civil Code section 3294;

D.  For emotional distress damages;

E.  For such other and further relief as the court deems just and proper.

### FOURTEENTH CLAIM

### (For Violation of Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*, against Defendants U.S. BANCORP and DOE 1 through DOE 20)

217.   Plaintiffs re-allege each and every allegation in this Complaint and incorporate them by reference as if fully set forth herein.

218.   Defendant U.S. Bank violated 15 U.S.C. § 1693 *et seq.*, by the following acts or omissions:

a.  failing to deliver or mail to Ms. Perdomo an explanation of its findings within three (3) business days after the conclusion of its investigation pursuant to subsection (a) or (c) of 15 U.S.C. § 1693f(d);

b.  failing to mail or deliver to Ms. Perdomo, despite her request to promptly deliver or mail to

1   her, reproductions of all documents which Defendant U.S. Bank or its personnel relied upon

2   to conclude that such error did not occur, as required by 15 U.S.C. § 1693f(d);

3   c.   failing to give Ms. Perdomo notice of the right to request reproductions with the explanations

4   of its findings, as required by 15 U.S.C. § 1693f(d);

5   d.   making and processing, permitting, continuing to make and process electronic funds transfers

6   to and from Ms. Perdomo's accounts without authorization, in violation of 15 U.S.C.

7   § 1693g(a); and

8   e.   imposing and charging Ms. Perdomo with greater limits of liability for unauthorized

9   electronic funds transfers than authorized or permitted by 15 U.S.C. § 1693g(a).

10  219.   As a direct and proximate result of Defendant U.S. Bank's acts and omissions and its violation of

11  15 U.S.C. § 1693 et seq., Ms. Perdomo is entitled to actual damages, additional damages in the

12  amount of up to $1,000, and reasonable attorney's fees, in accordance with 15 U.S.C. § 1693m(a),

13  and treble damages in accordance with 15 U.S.C. § 1693f(e), all in an amount to be proven at trial.

14  220.   Ms. Perdomo has incurred and will continue to incur attorney's fees as a result of prosecuting

15  this cause of action.

16  WHEREFORE, Plaintiffs pray for judgment as follows:

17  As to the Fourteenth Claim:

18  A.   For actual damages in an amount according to proof, pursuant to 15 U.S.C. § 1693m(a)(1);

19  B.   For additional statutory damages of up to $1,000, pursuant to 15 U.S.C. § 1693m(a)(2);

20  C.   For costs of suit;

21  D.   For attorney's fees, pursuant to 15 U.S.C. § 1693m(a)(2), and all other applicable statutes;

22  E.   For interest;

23  F.   For statutory treble damages, pursuant to 15 U.S.C. §§ 1693f(e), 1693m(a)(1);

24  G.   For such other and further legal and equitable relief as this Court may deem proper.

25  **FIFTEENTH CLAIM**

26  **(For Breach of the Covenant of Good Faith and Fair Dealing, Against Defendants U.S.**

27  **BANCORP and DOE 1 through DOE 20)**

28  221.   Plaintiffs re-allege each and every allegation in this Complaint and incorporate them by

1   reference as if fully set forth herein.

2   222.   As alleged herein, Ms. Perdomo entered into a written contract with Defendant U.S. Bank (the

3   "Agreement").

4   223.   The Agreement contains an implied covenant of good faith and fair dealing.

5   224.   As alleged herein, by failing to properly investigate Defendant Garcia's fraud, and restore funds

6   to Ms. Perdomo's account, Defendant U.S. Bank breached the covenant of good faith and fair

7   dealing.

8   225.   As a direct and proximate result of Defendants' wrongful acts and/or omissions alleged herein,

9   Plaintiffs have suffered actual damages in an amount according to proof to be shown at trial.

10   WHEREFORE, Plaintiffs pray for judgment as follows:

11   As to the Fifteenth Claim:

12   A. For damages in an amount according to proof;

13   B. For costs of suit; and

14   C. For such other and further relief as this Court deems just and proper.

15   **SIXTEENTH CLAIM**

16   **(For Tortious Interference With Contract, Against Defendants CARMEN GARCIA and DOE 1**

17   **through DOE 20)**

18   226.   Plaintiffs re-allege each and every allegation in this Complaint and incorporate them by

19   reference as if fully set forth herein.

20   227.   As alleged herein, Biomeda entered into a written contract with Defendant Javad Zolfaghari (the

21   "Lease Agreement").

22   228.   Defendants knew of the contract between Biomeda and Defendant Javad Zolfaghari.

23   229.   Defendants interfered with the contract between Biomeda and Defendant Javad Zolfaghari by

24   failing to make rent payments as they became due.

25   230.   Defendants further disrupted this contractual relationship between Biomeda and Defendant Javad

26   Zolfaghari by appearing in the matter Zolfaghari v. Biomeda Corp., San Mateo County Superior

27   Court case number CIV195951 (the "UD Action"), without authorization.  The UD Action resulted

28   in a judgment against Biomeda.

_____
*Perdomo, et al. v. Garcia, et al. – Complaint for Violations of Racketeer and Corrupt Organizations Act (18 U.S.C. § 1961), and California State Law*

231.     Defendants further disrupted this contractual relationship between Biomeda and Defendant Javad Zolfaghari by filing a complaint in the matter <u>Garcia v. Zolfaghari</u>, San Mateo County Superior Court case number CIV469142.  This complaint was an unauthorized attempt by Defendant Garcia, as an individual plaintiff, to personally seize Biomeda's personal and intellectual property and convert it to her own personal use.

232.     As a direct, foreseeable, and proximate result of Defendants' acts, Plaintiffs suffered actual damage.   Defendants' conduct as alleged herein has caused Plaintiffs damages in an amount according to proof to be shown at trial.

233.     As a direct, foreseeable, and proximate result of Defendants' wrongful acts alleged herein, Plaintiffs have incurred and will continue to incur costs as a result of prosecuting this action.

234.     Defendants' conduct was malicious, deceitful, and oppressive; therefore Plaintiffs are entitled to punitive damages.   Plaintiffs allege Defendants' conduct, as described above, was done with oppression, fraud, and malice, as defined in California Civil Code section 3294 and Plaintiffs should recover, in addition to actual damages, damages to make an example of and to punish Defendants.

WHEREFORE, Plaintiffs pray for judgment as follows:

As to the Sixteenth Claim:

A.  For compensatory damages in an amount according to proof;

B.  For special damages pursuant to California Civil Code section 3333;

C.  For punitive damages pursuant to California Civil Code section 3294;

D.  For costs of suit; and

E.  For such other and further relief as this Court deems just and proper.

## SEVENTEENTH CLAIM

**(For Unjust Enrichment, Against Defendants CARMEN GARCIA, U.S. BANCORP, JAVAD ZOLFAGHARI, JULIA ZOLFAGHARI, PUBLIC STORAGE FRANCHISE, INC., and DOE 1 through DOE 20)**

235.     Plaintiffs re-allege each and every allegation in this Complaint and incorporate them by reference as if fully set forth herein.

236.     As a result of the conduct alleged herein, Defendants received benefits at Plaintiff's expense.

*Perdomo, et al. v. Garcia, et al. – Complaint for Violations of Racketeer and Corrupt Organizations Act (18 U.S.C. § 1961), and California State Law*

237.    Defendants' retention of these benefits is unjust.

WHEREFORE, Plaintiffs pray for judgment as follows:

As to the Seventeenth Claim:

A.  For imposition of a constructive trust;

B.  For restitution; and

C.  For such other and further relief as the court deems just and proper.

## EIGHTEENTH CLAIM

## (For Trespass to Chattels, Against Defendants CARMEN GARCIA, U.S. BANCORP, JAVAD ZOLFAGHARI, JULIA ZOLFAGHARI, PUBLIC STORAGE FRANCHISE, INC., and DOE 1 through DOE 20)

238.    Plaintiffs re-allege each and every allegation in this Complaint and incorporate them by reference as if fully set forth herein.

239.    Ms. Perdomo has a right to possess the funds illegally transmitted by wire transfer by Defendant Garcia.

240.    Ms. Perdomo has a right to possess her funds and property improperly converted by Defendant Garcia for her own personal use.

241.    Ms. Perdomo has a right to possess the funds Defendant U.S. Bank failed to restore to Ms. Perdomo's account.

242.    Ms. Perdomo has a right to possess the personal belongings improperly removed from the Delaware Street Public Storage by Defendant Public Storage Franchise.

243.    Plaintiffs have a right to possess the personal property improperly removed from 1849 Bayshore by Defendants Javad Zolfaghari and Julia Zolfaghari.

244.    Defendants intentionally interfered with Plaintiffs' use of possession of the property described herein.

245.    Defendants' claims are without any right, and Defendants have no right, title, estate, lien, or interest in any of the personal property identified herein.

246.    Despite repeated requests, Plaintiffs have been denied use of this personal property since on or about January 2008.

247.   As a direct, foreseeable, and proximate result of Defendants' acts, Plaintiffs have suffered actual damage. Defendants' conduct as alleged herein has caused Plaintiffs damages in an amount according to proof to be shown at trial.

248.   As a direct and proximate result of Defendants' acts and omissions, Ms. Perdomo suffered severe emotional distress, including but not limited to, discomfort, inconvenience, annoyance, humiliation, fear, anxiety, all to her general detriment, and in an amount according to proof.

249.   As a direct and proximate result of Defendants' wrongful acts alleged herein, Plaintiffs have incurred and will continue to incur costs as a result of prosecuting this cause of action.

250.   Defendants' conduct was malicious, deceitful, and oppressive; therefore Plaintiffs are entitled to punitive damages. Plaintiffs allege Defendants' conduct, as described above, was done with oppression, fraud, and malice, as defined in California Civil Code sections 3294 and 3288, and Plaintiffs should recover, in addition to actual damages, damages to make an example of and to punish Defendants.

WHEREFORE, Plaintiffs pray for judgment as follows:

As to the Eighteenth Claim:

A. For compensatory damages in an amount according to proof;

B. For right to repossession of converted property;

C. For emotional distress damages;

D. For punitive damages pursuant to Civil Code section 3294;

E. For costs of suit; and

F. For such other and further relief as the court deems just and proper.

Dated: December 21, 2009          By: _____
                                       James H. Oddie, Esq.
                                       ODDIE, LYNN & GRISANTI, P.C.
                                       Attorney for Plaintiffs